IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TRAE L.,[1]

Plaintiff,

vs.

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendants.

**4:25-CV-03186**

**MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS**

This is an action for judicial review of the Commissioner's final decision denying plaintiff Trae L.'s application for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Filing 1. Trae L. filed a Motion for an Order Reversing the Commissioner's Decision (Motion to Reverse). Filing 16. The Commissioner filed a Motion to Affirm the Commissioner's Decision (Motion to Affirm). Filing 21. For the following reasons, the Court grants the Commissioner's Motion to Affirm and denies Trae L.'s Motion to Reverse.

## I. INTRODUCTION

On May 27, 2021, Trae L. applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Filing 9-5 at 17–18. The Commissioner of Social Security (the Commissioner) denied his application for benefits on October 19, 2021. Filing 9-4 at 20. Trae L. requested reconsideration. Filing 9-4 at 24, 45. On October 5, 2022, the Commissioner affirmed its previous denial of benefits. Filing 9-4 at 46–47.

On October 11, 2022, Trae L. requested a hearing to review the Commissioner's benefits determination. Filing 9-4 at 50–51. On October 14, 2022, Trae L. appeared at a hearing before an

[1] The Court will refer to Plaintiff by first name and first initial of last name to protect his privacy.

Administrative Law Judge (ALJ) to review the determination of the Commissioner. Filing 9-2 at 44–72. On August 11, 2023, the ALJ issued a decision finding that Trae L. "was not disabled." Filing 9-2 at 34, 13–34. The Appeals Council denied Trae L.'s request for review of the ALJ's decision. Filing 9-2 at 2–5. On judicial review, this Court reversed and remanded the ALJ's decision to the Commissioner pursuant to the parties' joint stipulation to remand. Filing 11-7 at 11–13. On August 5, 2024, the Appeals Council vacated the Commissioner's final decision and remanded the case to an ALJ to resolve (1) whether the claimant could perform other work existing in significant numbers in the national economy and (2) whether any apparent conflicts exist between the Dictionary of Occupational Titles (DOT) and vocational expert evidence. Filing 11-7 at 16–17.

On December 6, 2024, the Social Security Administration issued Social Security Ruling 24-3p (Ruling 24-3p) "rescind[ing] and replac[ing] SSR 00-4p," the relevant guidance for the use of vocational expert evidence in disability decisions. SSAR 24-3p, 89 Fed. Reg. 97158-01 (Dec. 6, 2024) (quotation modified). Ruling 24-3p no longer required ALJs "to identify and resolve conflicts between occupational information provided by [vocational experts] and information in the [Dictionary of Occupational Titles (DOT)]." SSR 24-3p, 89 Fed. Reg. 97158, at *2. Ruling 24-3p took effect on January 6, 2025. *Id.*

On January 29, 2025, Trae L. appeared at another hearing and testified before an ALJ to obtain a new decision regarding his eligibility for disability benefits. Filing 11-6 at 61–94. A vocational expert also appeared and testified at that hearing in accordance with the remand instructions provided by this Court. Filing 11-6 at 61. The vocational expert testified that Trae L. "would have been able to perform the requirements of representative sedentary, unskilled occupations" such as document preparer, telephone quotation clerk, or addresser. Filing 11-6 at 48.

On February 14, 2025, the ALJ issued an unfavorable decision again finding that Trae L. "was not disabled." Filing 11-6 at 50, 30–50. The ALJ concluded that Trae L. "had the residual functional capacity to perform sedentary work as defined in [20 C.F.R. § 404.1567(a)]" with a number of exceptions. Filing 11-6 at 40. Trae L. submitted general and specific exceptions contesting the ALJ's decision between March and April 2025. Filing 11-6 at 2. The Appeals Counsel declined to review the ALJ's decision. Filing 11-6 at 2. With the administrative remedies exhausted, Trae L. sought review again in federal court. Filing 1; *see Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) ("Once the claimant has exhausted these administrative remedies, he may seek review in the federal district court." (citing 42 U.S.C. § 405(g))).

On September 5, 2025, Trae L. filed the lawsuit currently before the Court. Filing 1. Trae L.'s Complaint asserted the Administration "committed error of law by denying Appeals Council review of the decision by the Administrative Law Judge, or otherwise to deny relief that was within the authority of the Appeals Council." Filing 1 at 1. Additionally, the Complaint also asserted "[t]he conclusions and findings of fact of the [Commissioner] are not supported by the substantial evidence and are contrary to law and regulation." Filing 1 at 2.

On February 2, 2026, Trae L. filed the Motion to Reverse now before the Court. Filing 16. On May 4, 2026, the Commissioner filed the Motion to Affirm also before the Court. Filing 21. Both parties fully briefed the motions. Filing 22; Filing 23.

## II. LEGAL ANALYSIS

### A. Applicable Legal Standards

"Title II [of the Social Security Act] 'provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need.'" *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (quoting *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . ." 20 C.F.R. § 404.1505(a). A disability determination proceeds in the five-step sequential evaluation detailed in 20 C.F.R. § 404.1520.[2] Here, the challenge under consideration is to the fifth step (Step Five), which requires an "assessment of [the claimant's] residual functional capacity and [their] age, education, and work experience." 20 C.F.R. § 404.1520(a)(4)(v). A claimant is disabled only if the claimant "cannot make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). Therefore, a Step Five analysis must include "identify[ing] the types of jobs [the claimant] could perform notwithstanding his disabilities" and "ascertain[ing] whether those kinds of jobs 'exist[] in significant numbers in the national economy.'" *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.906(c)(1)).

When challenging a Social Security disability determination, "[m]odern-day claimants must generally proceed through a four-step process before they can obtain review from a federal court." *Smith*, 587 U.S. at 475–76. "If a claimant has proceeded through all four steps on the merits," including a hearing before an ALJ, "[42 U.S.C. § 405(g)] entitles him to judicial review in federal district court." *Smith*, 587 U.S. at 476; *Yuckert*, 482 U.S. at 142 (detailing the

[2] The five steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520(a)(4).

administrative remedies that precede judicial review). A reviewing court affirms the "Commissioner's decision to deny . . . benefits unless it is unsupported by substantial evidence in the record as a whole or based on legal error." *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997) (citing *Newton v. Chater*, 92 F.3d 688, 691–92 (8th Cir. 1996)).

"The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026) (quoting *Biestek*, 587 U.S. at 102). The Eighth Circuit Court of Appeals has explained that substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (citation omitted); *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016).

On the other hand, the district court must determine whether the ALJ's decision "complies with the relevant legal requirements." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *e.g.*, *Collins*, 648 F.3d at 872 (finding the ALJ committed legal error by not posing a hypothetical question to the vocational expert).

**B. The Parties' Arguments**

Trae L. asserts two grounds for reversing and remanding the ALJ's. Filing 16 at 1. First, Trae L. challenges the ALJ's determination that Trae L. possessed the requisite ability to perform a reduced range of unskilled sedentary work that included document preparer, telephone quotation clerk, and addresser. Filing 16 at 4 (citing Filing 11-6 at 48). Trae L. argues that the ALJ's residual

functional capacity determination requires a simple-task limitation that excludes jobs that require Reasoning Level 3 per the Dictionary of Occupational Titles. Filing 16 at 4–5. Second, Trae L. argues that the number of alternative jobs testified to by the vocational expert at the hearing before the ALJ falls below the standard of "significant numbers either in the region where [the claimant] lives or in several other regions of the country." Filing 16 at 10 (quoting 20 C.F.R. § 404.1566(a)). Accordingly, Trae L. concludes that this Court should vacate the final agency decision and remand the case for further proceedings. Filing 16 at 12.

In response, the Commissioner counters that the ALJ properly found, at Step Five, that Trae L. could do other work existing in significant numbers in the national economy through evidence offered by the vocational expert at the hearing. Filing 22 at 3. Additionally, the Commissioner argues that the ALJ did not err in determining that the number of jobs met the level of significance required to deny a finding of disability. Filing 22 at 10–12.

### C. The Commissioner's Decision Is Supported by Substantial Evidence in the Record

#### *1. The ALJ's Determination of Trae L.'s Residual Functional Capacity for Sedentary Work Does Not Impose a Simple Task Limitation*

The ALJ determined that Trae L. possessed the residual functional capacity "to perform sedentary work" as defined in 20 C.F.R. § 404.1567(a). Filing 11-6 at 40. "Sedentary work" is a physical exertion limitation that involves

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ also articulated several exceptions to the definition of "sedentary work":

> [H]e was able to stoop, kneel, crouch, and reach overhead occasionally and was able to perform work that does not require crawling. The claimant was able to

> handle and finger frequently. He was able to perform work that did not require concentrated exposure to extreme cold, wetness, or vibration. He was able to perform work in an environment with no more than moderate background noise. The claimant was able to perform work that did not require climbing ladders or other exposure to hazards such as work at unprotected height. He was able to walk with the use of a cane and able to perform all the lifting and carrying required by sedentary work with the use of his free hand alone. The claimant was able to perform simple tasks and to exercise proper judgment in performing those tasks. He was able to respond appropriately to routine changes in the workplace.

Filing 11-6 at 40. When Trae L. brought general and specific exceptions to the ALJ's decision, the Appeals Counsel summarized the ALJ's finding as a "residual functional capacity [that] limited [Trae L.] to simple tasks." Filing 11-6 at 2. Importantly, the Appeals Counsel did not assume jurisdiction and explicitly concluded that the ALJ's decision "is the final decision of the Commissioner of Social Security." Filing 11-6 at 3.

The Court rejects Trae L.'s assumption that the ALJ's residual functional capacity decision imposed a "simple task" limitation.[3] The regulation defining "sedentary work" does not mention or imply any associated limitation to jobs involving only simple tasks. *See* 20 C.F.R. § 404.1567(a). The ALJ did not instruct the vocational expert on a simple task limitation. Filing 11-6 at 87. Additionally, the ALJ's decision explicitly stated that Trae L. "was able to perform simple tasks and to exercise proper judgment in performing those tasks." Filing 11-6 at 40. The ALJ's explanation of the residual functional capacity finding similarly states:

> There is simply an absence of evidence in the record supporting the claimant's allegations of serious difficulty concentrating or other inability to complete basic mental work activities. Rather, his mental status examinations, conservative treatment, and reported activities of daily living support the finding that the claimant was able to perform simple tasks, exercise proper judgment in performing those tasks, and to respond appropriately to routine changes in the workplace.

[3] The Court points out that neither party presented evidence proving or contesting the existence of a simple task limitation in the residual functional capacity definition. In previous proceedings, the Commissioner or ALJ more clearly mandated a simple task limitation. *Compare* Filing 11-6 at 40, *with* Filing 9-3 at 9, *and* Filing 11-7 at 37. Nevertheless, the Court's review of the record and the ALJ's holding at issue shows no limitation to simple tasks or cognitive limitations were imposed by the ALJ's residual functional capacity decision issued on February 14, 2025. Filing 11-6 at 30–50.

Filing 11-6 at 45. The Court reads such statements as clear observations of Trae L.'s minimum capacity, not as a maximum ability or limitation to simple tasks. Therefore, the Court concludes that the ALJ's decision that Trae L. "had the residual functional capacity to perform sedentary work" did not impose a simple task limitation. Filing 11-6 at 40.

The Court notes that the Appeals Council imprecisely summarized the ALJ's definition of residual functional capacity as "limit[ing] [Trae L.] to simple tasks." Filing 11-6 at 2. However, the ALJ's decision is the "final decision," Filing 11-6 at 3, so the Court reviews the language of the controlling decision where the ALJ imposed a "limitation to simple work." Filing 16 at 4.

*2. The Alternative Jobs Offered to the ALJ by the Vocational Expert Do Not Conflict with Trae L.'s Residual Functional Capacity*

At the ALJ hearing, the vocational expert offered testimony that—given the residual functional capacity hypothetical described by the ALJ—Trae L. would be able to perform "the requirements of representative sedentary, unskilled occupations" including: (1) document preparer, (2) telephone quotation clerk, or (3) addresser. Filing 11-6 at 48. According to the Dictionary of Occupational Titles, the jobs of document preparer and telephone quotation clerk both qualify as "Reasoning Level 3" jobs. *See* DOT # 249.587-018, 1991 WL 672349 (document preparer); DOT # 237.367-046, 1991 WL 672194 (telephone quotation clerk). The Dictionary of Occupational Titles defines Reasoning Level 3 as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standard situations." DOT, App. C, 1991 WL 688702.

The Court rejects Trae L.'s argument that the ALJ's consideration of the Reasoning Level 3 jobs conflicts with the ALJ's residual functional capacity definition. As explained previously, there is no "limitation to simple work" here. *See* Section II.C.1. Nothing in the ALJ's residual functional capacity ruling indicates that Trae L.'s mental capacity has an "impact on his capacity to perform

the full range of sedentary work." *Lucy*, 113 F.3d at 909. Rather, the ALJ only outlined physical exceptions applicable to Trae L.'s residual functional capacity. Filing 11-6 at 40, 87. Additionally, "[m]any of the jobs listed [in the unskilled sedentary job category] require level two reasoning or higher." *Lucy*, 113 F.3d at 909. Therefore, the ALJ correctly considered the jobs of document preparer and telephone quotation clerk—even with Reasoning Level 3—on the basis of the vocational expert's testimony that Trae L. could perform "the requirements of representative sedentary, unskilled occupations." Filing 11-6 at 48.

*3. Substantial Evidence Exists that a Significant Number of Jobs Are Available to Trae L. in the National Economy Despite His Disability*

In a Step Five analysis, the ALJ must "identify the types of jobs [the claimant] could perform notwithstanding his disabilities" and "ascertain whether those kinds of jobs 'exist[] in significant numbers in the national economy.'" *Biestek*, 587 U.S. at 100 (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.906(c)(1)). Here, the vocational expert testified that an individual with the residual functional capacity assigned to Trae L. could perform three alternative occupations totaling 21,762 jobs in the national economy. *See* Filing 11-6 at 48, 88. Additionally, the vocational expert "identified the data source(s) she relied on and provided her general approach to estimating job numbers." Filing 11-6 at 48, 88–89. Based on the vocational expert's testimony and "considering [Trae L.'s] age, education, work experience, and residual functional capacity," the ALJ concluded that Trae L. "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."[4] Filing 11-6 at 49.

[4] For the jobs under consideration here,

> [t]here is nothing in the [Dictionary of Occupational Titles] descriptions to indicate that these jobs would be found only in isolated parts of the country. Nor is there anything in the record to indicate that the [vocational expert] or ALJ did not understand the meaning of "in the national economy."

*Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *17 (D. Neb. Nov. 15, 2021) (footnote omitted) (quoting 42 U.S.C. § 423(d)(2)(A)). In fact, the vocational expert testified that she believed the numbers of the jobs to be "a little on the low side" because of filtering. Filing 11-6 at 90.

The Court rejects Trae L.'s argument that the jobs of document preparer (14,047 jobs) and telephone quotation clerk (5,965 jobs) should be excluded, and thus the "1,750 addresser jobs" that remains after those exclusions "is not a significant number nationally." Filing 16 at 8 (emphasis omitted); *see* Filing 16 at 9. As explained above, the Court rejects that argument because the residual functional capacity assigned to Trae L. allows for the consideration of Reasoning Level 3 jobs. *See* Section II.C.2. Therefore, the Court should consider the full number of jobs to which the vocational expert testified at the ALJ hearing.

The Court also rejects Trae L.'s argument that the ALJ's consideration of national numbers alone fails to satisfy the burden of proving that work "exists in significant numbers." 20 C.F.R. § 404.1560(c)(1). The Eighth Circuit "ultimately leave[s] to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997).

Overall, "[t]here is no evidence to give [the Court] pause in concluding that the ALJ used common sense in applying the significant numbers requirement to [Trae L.'s] particular factual situation." *Hall*, 109 F.3d at 1260. The total number of other available jobs—21,762 jobs—satisfies the Court's understanding of "significant numbers in the national economy (either in the region where [the claimant] live[s] or in several regions in the country)" required by 20 C.F.R. § 404.1560(c)(1).[5] 20 C.F.R. § 404.1560(c)(1); *see Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997). Additionally, the Court concludes that substantial evidence—meaning "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a

[5] One magistrate judge within the Eighth Circuit "drew the line between a 'significant' and an insignificant number of jobs in the national economy—without evidence of the number of jobs available locally—at around 20,000 jobs." *Anna K. v. O'Malley*, Case No. 23-cv-549 (TNL), 2024 WL 4285429, *8 (D. Minn. Sep. 25, 2024) (quoting *Shari B. v. Kijakazi*, No. 22-cv-1539 (DJF), 2023 WL 6130679, at *8 (D. Minn. Sep. 19, 2023)). This Court will instead rely on controlling precedent from the Eighth Circuit Court of Appeals accepting a much lower number of jobs in the national economy as significant. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (concluding that as few as 10,000 jobs in the national economy qualified as significant).

conclusion"—exists in the record to support the ALJ's decision that Trae L. is not disabled. *Phillips*, 671 F.3d at 702 (citation omitted).

*4. Summary*

The Court concludes that the ALJ's decision denying Trae L. disability benefits was supported by substantial evidence in the record as a whole and not based on legal error. *See Lucy*, 113 F.3d at 908 (citing *Newton*, 92 F.3d at 691–92). The ALJ's residual functional capacity did not impose a simple task limitation, so the vocational expert could recommend alternative occupations with Reasoning Level 3. Additionally, the ALJ's Step Five analysis properly relied on the vocational expert's testimony and Trae L.'s age, education, work experience, and residual functional capacity. Filing 11-6 at 48. Therefore, according to 42 U.S.C. § 405(g), the Court affirms the ALJ's decision.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that the Court grants the Commissioner's Motion to Affirm, Filing 21, and denies Trae L.'s Motion to Reverse, Filing 16.

IT IS FURTHER ORDERED that judgment shall enter in favor of the Commissioner and against Trae L.

Dated this 24th day of September, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge